IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 20 CR 832 |
| ) | Hon. Judge John Robert Blakey |
| GREGORY DONALD, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT GREGORY DONALD'S MOTION TO SUPPRESS EVIDENCE**

Now comes the Defendant, Gregory Donald, by and through his undersigned counsel, and respectfully submits the instant Motion to Suppress Evidence, pursuant to the Fourth Amendment to the Constitution of the United States of America, as well as the holdings in *Illinois v. Gates*, 462 U.S. 413 (1983), and *United States v. Glover*, 755 F.3d 811 (7th Cir. 2014). In support thereof, Mr. Donald states as follows:

**I.     BACKGROUND**

On November 30, 2020, Mr. Gregory Donald was charged by Indictment ("the Indictment") with possessing a firearm while being previously convicted of a felony, in violation of 18 U.S.C. § 922(g)(1). Dkt. 1. Specifically, the Indictment alleges that Mr. Donald knowingly possessed a loaded Glock 29 firearm on August 28, 2020, despite having previously been convicted of a felony offense. In addition to the single charge, the Indictment includes a forfeiture allegation related to the recovered firearm and ammunition. Dkt. No. 1, p. 2.

The facts giving rise to Mr. Donald's indictment occurred in the early afternoon of August 28, 2020, on the sidewalk in front of 7851 N. Marshfield Avenue in Chicago, Illinois. Unbeknownst to Mr. Donald and the others present at 7851 N. Marshfield, there was a Chicago Police Department

("CPD") - Police Observation Device ("POD") camera near them. So near was the POD camera that the officers monitoring the camera were able to actively surveil Mr. Donald and the others from 12:17 p.m. until 12:35 p.m. when CPD officers arrived at 7851 N. Marshfield Ave. and began making arrests. *See* Arrest Report and Original Case Incident Report (attached hereto as Exhibits A and B, respectively).

Prior to making those arrests, the officers monitoring the POD camera observed a group of individuals gambling in violation of 720 ILCS § 5/28-1-A-1. *See* Ex. A, p. 3. Officers contend that, via the POD camera, they also saw Mr. Donald with a "bulge on the right side of his pants," and was "favoring his right side." *Id.* According to the officers monitoring the POD camera, the bulge in Mr. Donald's pants resembled a handgun. *Id.* The arresting and attesting officers never allege that Mr. Donald engaged in the game of dice at any point, and the pod camera confirms this.[1]



---

[1] Although the POD camera footage has not been attached as an exhibit to the instant filing, it can be produced to the court for review upon request.

For the majority of the pod camera footage, Mr. Donald, shown in these screenshots wearing a white t-shirt and black sweatpants, stands with his back against the door and observes the others playing dice.



Additionally, at no time does the POD camera video show Mr. Donald with a weapon. Instead, the POD camera simply shows Mr. Donald standing around with what the attached reports describe as a "suspicious bulge" on Mr. Donald's right hip. Ex. A, p. 3. The attesting officers go on to describe the bulge as "resemble[ing] the shape of a handgun." *Id.* The image below is perhaps the clearest image of Mr. Donald with his shirt raised, and the "suspicious bulge" which the officers believe "resemble[s] the shape of a handgun." Ex. A, p. 3.



After observing the pod camera for 18 minutes, Chicago police officers arrive on scene, rush inside the building (which Mr. Donald had just entered), and locate Mr. Donald immediately inside the door. Mr. Donald offered no resistance and officers placed him in handcuffs. Upon searching Mr. Donald, the officers discovered a handgun.

Mr. Donald was initially charged in state court on August 28, 2020 for possessing a firearm while being a felon, in violation of 720 ILCS 5/24-1/1(a). The government later charged Mr. Donald with the present count of possessing a handgun while having previously been convicted of a felony in violation of 18 U.S.C. 922(g)(1). Dkt. 1. Mr. Donald's motion to suppress should be granted due to the CPD officers violating his right against unreasonable search and seizure, and this Court should suppress all evidence obtained as a result of the unconstitutional arrest.

4

II.  ARGUMENT

The Fourth Amendment to the United States Constitution provides: "[t]he right of the people to be secure in their persons…and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause …" U.S. CONST. amend. IV. Thus, the Fourth Amendment guarantees the right of citizens to be free from unreasonable searches and seizures. *Bailey v. United States*, 133 S. Ct. 1031, 1035 (2013). Where evidence is obtained in violation of this guarantee, the exclusionary rule generally requires that the evidence be suppressed. See *Brock v. United States*, 573 F.3d 497, 499-500 (7th Cir. 2009). Even if short in duration, searches and seizures must be founded on objective justifications. *United States v. Mendenhall*, 446 U.S. 544, 551 (1980).

In the case at hand, there was no reasonable suspicion to detain Mr. Donald in the first place, and there was no basis to subsequently search him. Thus, suppression is required.

### a. The police had no reasonable and articulable suspicion that Mr. Donald was committing a crime, and therefore had no basis to detain him.

Police may engage in investigatory stops, or *Terry* stops, when they have "reasonable suspicion that criminal activity is afoot." *Matz v. Klotka*, 769 F.3d 517, 522 (7th Cir. 2014); *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *Terry*, 392 U.S. at 30; *United States v. Wilson*, 963 F.3d 701, 703 (7th Cir. 2020) (reasonable suspicion is more than a hunch, but less than probable cause). A court must examine the totality of the circumstances to determine whether a search or seizure is reasonable under the Fourth Amendment. *United States v. Cortez*, 449 U.S. 411, 417 (1981); *Samson v. California*, 547 U.S. 843, 848 (2006). One of three things must happen during a *Terry* stop: "(1) the police gather enough information to develop probable cause and allow for continued detention; (2) the suspicions of the police are dispelled and they release the suspect; or (3) the suspicions of the police are *not* dispelled, yet the officers have not developed probable cause but

5

must release the suspect because the length of the stop is about to become unreasonable." *United States v. Reedy*, 989 F.3d 548, 553 (7th Cir. 2021) (emphasis in original), citing *United States v. Leo*, 792 F.3d 742, 751 (7th Cir. 2015). Evaluating whether the officers had reasonable suspicion to seize Mr. Donald is a fact-intensive inquiry: "we look to the totality of the circumstances to see whether police 'ha[d] a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Wilson*, 963 F.3d at 703, quoting *United States v. Howell*, 958 F.3d 589, 597-98 (7th Cir. 2020); *United States v. Cortez*, 449 U.S. 411, 417-18 (1981).

In the case at hand, CPD officers did not have reasonable suspicion that Mr. Donald was engaged in criminal activity and failed to gather enough information to support such a finding – prior to the seizure of Mr. Donald. As mentioned above, the police were suspicious that the group of individuals they observed on the POD camera was violating Illinois law by playing a game of dice. Ex. A, p. 3. Throughout the entirety of the POD camera footage, there is no point in which Mr. Donald participates in any aspect of the game of dice: he does not handle money, he does not handle dice, and he in no way plays the game. This is clear from the 18 minutes of POD camera footage preceding Mr. Donald's arrest – footage which was actively monitored by CPD officers before, during, and after the arrest of Mr. Donald. This information is also confirmed in the police reports which are silent of any mention that Mr. Donald was suspected of participating in the gambling. *See* Ex. A. At most, Mr. Donald is seen "standing with the group of subjects." *Id.* Thus, nothing in the police reports of investigation, or the footage they relied on, gives rise to reasonable suspicion that Mr. Donald was participating in the game of dice. See *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a particularized suspicion that the person is committing a crime"); *United States v. Richmond*, 924 F.3d 404, 411 (7th Cir. 2019) (a person's presence in a high-crime neighborhood does not, by itself, support a particularized suspicion he was committing a crime).

6

The police then report that Mr. Donald had a "bulge" on the right side of his pants. Ex. A, p. 3. Through their reports the officers offer that, based on experience, they recognized the bulge to be a firearm. Unfortunately, there is no point during the 18 minutes of continuous surveillance in which a firearm—or a bulge in the distinct shape of a firearm—is actually visible. In the majority of the video, the bulge appears as in the screenshot below.



The above screenshot presents what is likely the clearest view of Mr. Donald's pants and the "suspicious bulge." From this angle, there is no reason to believe the bulge in his pants is a gun rather than a phone, wallet, insulin pump, or a number of other items. This view of Mr. Donald, along with the few times he adjusts the right side of his pants and "looks in all directions," constitute the officers' only basis to develop reasonable suspicion. Based on the specific facts of this case, the officers did not develop reasonable suspicion to detain and search, nor probable cause to arrest. Simply put, none of the few reasons offered by the officers, individually or in combination, are sufficient. This conclusion is bolstered by the objective evidence found in the POD camera footage.

Mr. Donald's case is distinguishable from other cases in which officers saw a bulge which then supported a finding of reasonable suspicion. In some other cases, a bulge supported a finding

7

of reasonable suspicion of a crime because there were generally a multitude of other factors at play. In *Wilson*, the court found reasonable suspicion existed where, along with seeing a bulge in the defendant's pants, police received a call reporting men with guns selling drugs, and the defendant sprinted away from the scene upon seeing police. Specifically, the *Wilson* court noted that, when the officers tackled the defendant (who had been engaged in headlong flight from the officers), they:

> … knew he had a conspicuous bulge in his right pocket. [Officers] had watched him act evasively, grabbing the bulge, turning his right side away from their view, and sitting facing away from them. They knew they were in a high-crime area and had received a dispatch report minutes earlier of armed men selling drugs nearby.

963 F.3d at 703-04. Despite all of the above information, the *Wilson* court noted that:

> If these were all the facts, establishing reasonable suspicion might have been a close call for the officers. But Wilson's unprovoked, headlong flight from police in a high-crime area put any lingering doubt to rest.

*Id.* at 704. The instant case shares almost no similarities with the situation described by the Seventh Circuit court in *Wilson*.

Here, although the police claim that the area in which Mr. Donald was located is "known for a high volume of gang/narcotic activity," the officers offer no support for that conclusion. Mr. Donald was not acting evasively; indeed, he stood near the building at 7851 S. Marshfield for 18 minutes from the start of the POD camera video until the police arrived. When the police arrived, Mr. Donald did not flee, he simply entered the door next to which he was standing. This action is in stark contrast to the headlong flight found in *Wilson*. Additionally, there were not calls to police dispatch from concerned citizens about armed men selling narcotics. Last, Mr. Donald was not hiding his side or his waistband. To the contrary, the picture above demonstrates that he was walking around with his shirt pulled up. *See also Richmond*, 924 F.3d at 411 (reasonable suspicion existed where, upon seeing police approaching, the defendant quickened his pace, changed his direction, and cut across a property, and hid an object (the gun) between a screen and a door). None of the factors present in *Wilson* are present here, and this is not a close case –the officers had no

reasonable suspicion of Mr. Donald committing a crime which support his detention and search. As such, this Court should grant this motion to suppress and suppress the evidence recovered as a result of Mr. Donald's unconstitutional detention.

> **b. Because the officers had no reasonable suspicion of criminal activity on the part of Mr. Donald, there was no probable cause for an arrest, and no basis to search him.**

Probable cause for an arrest exists if, at the moment the arrest was made, the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing an offense was committed. *Hughes v. Meyer*, 880 F.3d 967, 969 (7th Cir. 1989). An "arrest" occurs, for Fourth Amendment purposes, when, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *Fox v. Hayes*, 600 F.3d 819, 833 (7th Cir. 2010). When a lawful arrest is made, it is reasonable for officers to search the person arrested for weapons. *Riley v. California*, 572 U.S. 373, 383 (2014), citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969) (overruled on other grounds). Further, even if an initial stop is constitutional, a subsequent frisk must be separately supported to be constitutional. *United States v. Williams*, 731 F.3d 678, 683 (7th Cir. 2013), citing *Ybarra v. Ilinois*, 444 U.S. 85, 94 (1979). This Court should find that Mr. Donald's arrest was made without probable cause, and any physical evidence gathered as a result of that arrest must be suppressed.

First, Mr. Donald was under arrest when officers rushed into the building he was in, pulled his hands behind his back, and placed him in handcuffs. Any reasonable person in such a situation would know they are not free to leave (and that it would be physically impossible for them to leave). Although the officers placed Mr. Donald under arrest, they did not have probable cause to do so. The information available to the officers was as follows: there was a group of people who appeared to be playing a game of dice. Mr. Donald was not participating in the game at any point. Mr. Donald

9

had a slight bulge on one side of his pants, which he adjusted a few times, while also adjusting the middle and left side of his pants (where no bulge appeared). Mr. Donald additionally looked around a few times, which officers found suspect. After taking these sparce circumstances into consideration, officers determined they had probable cause to make an arrest. This Court should find that such limited information should not constitute probable cause, where no weapon was visible and no other evidence of a crime was available. The officers did not even attempt to use their initial, unconstitutional detention of Mr. Donald to gather additional evidence which might support probable cause. Because the arrest was not lawful, evidence obtained from the search incident to the unlawful arrest must be suppressed.

Alternatively, if this Court finds that Mr. Donald was not under arrest and was, rather, detained for purposes of a *Terry* stop, the officers had no reasonable and articulable suspicion that he was armed and dangerous, and thus the search remains unjustified. As explained above, the facts offered by the officers in this case are limited at best. These facts cannot support a finding of probable cause, and also fail to meet the lower standard of reasonable suspicion, where an individual was simply adjusting his pants and looking in different directions. The bulge in Mr. Donald's pants was not in the shape of a gun on the POD camera – when it is visible at all, it looks like it may be a phone, wallet, or any number of things.

At no point during the events in question did the officers have enough information to develop reasonable suspicion that Mr. Donald was committing a crime, nor did they have nearly enough to constitute probable cause to make an arrest. Evidence found in the unlawful search, therefore, must be suppressed.

III.    **CONCLUSION**

Wherefore, Mr. Donald respectfully requests this Honorable Court grant his motion and suppress all evidence obtained as a result of the unreasonable detention and subsequent search, or, in the alternative, order an evidentiary hearing to resolve any issues of fact.

Respectfully submitted on this 22nd day of April, 2021.

    /s/    Stephen F. Hall
Stephen F. Hall

Attorney for Mr. Gregory Donald

**Law Office of Stephen F. Hall**
53 West Jackson Boulevard,
Suite 1424
Chicago, Illinois 60604
312.858.4400/ Stephen@sfhall.com